PHŒNIX INSURANCE COMPANY OF HARTFORD, CONNECTI-
CUT, ET AL. V. ABRAM ZLOTKY ET AL.

FILED DECEMBER 3, 1902. No. 12,307.

Commissioner's opinion, Department No. 2.

Arbitration: AGREEMENT: INSURANCE POLICY: OUSTING COURTS OF
JURISDICTION. "A provision in a policy that no suit or action
against the insurer 'shall be sustained in any court of law or
chancery until after an award shall have been obtained' by
arbitration, 'fixing the amount' due after loss, is void, the effect
of such provision being to oust the courts of their legitimate
jurisdiction." *German-American Ins. Co. v. Etherton*, 25 Nebr., 505,
followed and approved.

ERROR from the district court for Dodge county. Action
on insurance policies. Tried below before HOLLENBECK, J.
Verdict and judgment for plaintiffs. *Affirmed.*

*Charles J. Greene, Ralph W. Breckenridge, John C.
Kinsler* and *Clark C. McNish,* for plaintiffs in error.

*Courtright & Sidner, contra.*

OLDHAM, C.

The firm of Zlotky & Kurnick were engaged in merchan-
dise at Fremont, Nebraska, and had insurance on their
stock of goods for the aggregate amount of $12,000, in
policies for different amounts, in the different insurance
companies named in this cause of action as plaintiffs in
error. The stock of goods was subsequently wholly or
partially destroyed by fire. After the fire these various
policies were assigned in writing by the firm to the First
National Bank of Fremont, to secure an indebtedness
owing to that institution. A dispute arose as to the
amount of loss, which, on demand of the companies, the
holders of the policies refused to arbitrate. Suit was
subsequently instituted on these various policies of in-
surance, and plaintiffs in the court below had judgment
against each of the insurance companies, and these judg-

ments, in the aggregate, amounted to the sum of $7,200; and the companies bring error to this court.

Complaint is made in the brief of 'the insurance companies as to the form of the assignment of the various policies to the First National Bank of Fremont. The assignment was in writing, signed by the members of the firm, and was made for the alleged purpose of securing an indebtedness of the firm to the bank, and for all that might be incurred in the future, before the insurance was actually collected. We see nothing wrong with the assignment, nor do we understand how the rights of the insurance companies were in any manner affected by it. This assignment is not argued at any length in the brief, and is probably not relied upon seriously by plaintiffs in error.

The only question arising in the case that we are seriously urged to examine is that the refusal of the assured to comply with what is termed the "appraisal clause" in the different policies of insurance, should abate this suit. The different policies involved in this controversy are written upon what is known as the "New York Standard Form," and each contains, among other things, the following provisions: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs. * * * In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. * * * No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

It is conceded at the outset by counsel for the insurance companies that if the agreement had been for the arbitration of the whole question of liability, it would be against public policy and void; but it is contended that a different rule applies when the agreement is for the arbitration of but one question, *i. e.,* the amount of damage. Numerous cases are cited from both the state and federal courts tending to support this contention; the reasoning of all the cases being founded on the leading case of *Scott v. Avery,* 5 H. L. Cas. [Eng.], 811,—a decision rendered in 1856. The keynote of this decision was sounded by Lord Chancellor Cranworth in one of the majority opinions, when he said, referring to the agreement to arbitrate the amount of the loss, that it was the intention that no right of action should accrue until the amount of loss had been ascertained according to the mode pointed out in the policy, and,—using his exact language,—"that the right of action should be, not for what a jury should say was the amount of the loss, but for what the persons designated in that particular form of agreement should so say." Long after the announcement of the opinion in *Scott v. Avery, supra,* the people of the state of Nebraska adopted a constitution containing a Bill of Rights, enumerated among which were that "the right of trial by jury shall remain inviolate,"* and that "all courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law,"† etc. After the adoption of our constitution a question similar to the one in the case at bar was presented to this court in the case of *German-American Ins. Co. v. Etherton,* 25 Nebr., 505; and the rule was announced that "a provision in a policy that no suit or action against the insurer 'shall be sustained in any court of law or chancery until after an award shall have been obtained' by arbitration, 'fixing the amount' due after loss, is void, the effect of such provision being to oust the courts of their legitimate jurisdiction." This rule has been followed with

* Constitution, art. 1, sec. 6.      † Constitution, art. 1, sec. 13.

approval in *Union Ins. Co. v. Barwick,* 36 Nebr., 223; *Home Fire Ins. Co. v. Bean,* 42 Nebr., 537; *National Masonic Accident Ass'n v. Burr,* 44 Nebr., 256, 258; *Insurance Co. of North America v. Bachler,* 44 Nebr., 549; *Home Fire Ins. Co. v. Kennedy,* 47 Nebr., 138. And in the late case of *Schrandt v. Young,* 62 Nebr., 254, 266, it was said by POUND, C.: "Whatever distinction may be made elsewhere between arbitration generally and arbitration as to damages only, it is well settled in this state that a provision in a contract requiring arbitration, whether of all disputes arising under the contract, or only of the amount of loss or damage sustained by the parties thereto, will not be enforced, and that refusal to arbitrate is not available to the parties in an action growing out of the contract." We can not agree with counsel for the insurance companies that this long line of decisions rests on a mere *dictum* of the court in the case of *German-American Ins. Co. v. Etherton, supra,* and that the question now at issue was not properly before the court in that case. It appears from the statement contained in the opinion in the last-named case that the suit was brought on a policy of insurance covering a house and contents, which contained a condition similar to the so-called appraisal clauses in the policies now before us. That decision was rendered before the valued-policy law was adopted in this state, so that there would be the same reason for arbitrating the value of the house at that time that would now exist for the arbitration of the value of the stock of goods destroyed by fire. The right of appraisal as a condition precedent to the right of action in a court of law, was an issue as well defined in *German-American Ins. Co. v. Etherton, supra,* as it is in the case now pending; and the rule in that case, instead of announcing a mere *dictum,* is a solemn adjudication of a question then in issue before the court. We have no disposition to change a rule of this court which is in harmony with the genius and spirit of our constitution, and which has entered into every contract of insurance made in this state since its

announcement, sixteen years ago, merely for the purpose of putting ourselves in closer touch with the House of Lords. There is no better reason for upholding a contract that in advance ousts the jurisdiction of a court of law from finding the amount of damage in a dispute between assured and insurer, than there would be for upholding contracts ousting the jurisdiction of courts on any other question that might arise between them; and whenever we say that the jurisdiction of courts may be contracted away in advance on any question, we open a leak in the dyke of constitutional guarantees which might some day carry all away.

It is therefore recommended that the judgment of the district court be affirmed.

POUND, C., concurs in separate opinion.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

POUND, C., concurring.

I do not think the constitutional provision with reference to trial by jury has any bearing upon the question involved in this case. The same provision is to be found in the constitution of the United States and in the constitutions of the several states. Notwithstanding these provisions and the jealousy with which the right of trial by jury is guarded by the federal courts, those courts and most of the state courts uphold the distinction between an agreement to arbitrate the whole matter in dispute and an agreement for arbitration of the amount of loss or damage only, as made in the case of *Scott v. Avery*. Were the question a new one, I do not believe this court would take the stand to which it is now committed. But every court, in the course of time, develops some peculiar doctrines with respect to which it differs from others of coordinate jurisdiction. Where these peculiar doctrines work no harm, certainty and consistency are no less im-

portant than agreement with other courts. The rule in question has been announced so many times that it may be said to have entered into the contracts in force in this state, and is commonly understood by all persons to govern the agreements which they make. It is by no means a bad rule and I see no reason to believe that it operates unjustly.

I am therefore of opinion that the rule ought to be adhered to, and that the judgment should be affirmed.

NOTE.—*Agreements to Arbitrate—Contracts—Pending Actions.* Agreements to arbitrate embodied in contracts or made with reference to pending actions, are favored by courts, when they do not—and this is the vital question—strike at the courts' jurisdiction. *Union P. R. Co. v. Anderson,* 11 Colo., 293, 18 Pac. Rep., 24; *Bailey v. District of Columbia,* 9 App. Cas. [D. C.], 360; *Masterson v. Masterson,* 22 Ky. L. Rep., 1193, 60 S. W. Rep., 301; *Hood v. Hartshorn,* 100 Mass., 117, 1 Am. Rep., 89; *Anderson v. Meislahn,* 12 Daly [N. Y.], 149; *Singerly v. Johnson,* 3 Wkly. Notes Cas. [Pa.], 541; *Knoche v. Chicago, M. & St. P. R. Co.,* 34 Fed. Rep., 471, 472. The opinion in this last case was by Thayer, J. (orally): A clause in a contract agreeing generally to submit all of the questions that might arise under the contract to arbitration, is void; the same being against public policy, because the effect is to oust the jurisdiction of the courts. Nevertheless, it is competent for parties to stipulate in a contract that the value of property contracted to be sold or delivered shall be ascertained or fixed by arbitrators chosen for the purpose. Such special stipulations in contracts, relating to the manner in which the value of things forming the subject-matter of the contract shall be ascertained, are valid. In the latter class of cases, parties can not ignore the stipulation and sue on the contract; they must at least make an effort to have the value of the thing ascertained according to the stipulations in the agreement, before suit can be maintained.—W. F. B.