VIRGINIA HEISNER, APPELLEE, v. BOBBY JONES ET AL., APPELLEES, PROTECTIVE FIRE AND CASUALTY COMPANY, GARNISHEE-APPELLANT.

169 N. W. 2d 606

Filed July 25, 1969. No. 37170.

Blevens and Bartu, for appellant.

John P. Miller and Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, for appellee Heisner.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This appeal arose out of a garnishment action brought by Virginia Heisner, wife of the insured, against Bobby Jones and Betty Barrett, and Protective Fire and Casualty Company to enforce Protective Fire and Casualty Company's contractual obligations under the uninsured motorist provision of an insurance policy issued to the insured. From a decision for the plaintiff, Virginia Heisner, Protective Fire and Casualty Company, hereinafter referred to as Protective, appeals.

The facts are stipulated. Protective is the automobile insurance carrier for Richard Heisner and his wife Virginia Heisner, the plaintiff. Included in the policy is uninsured motorist coverage. On December 24, 1966, Virginia Heisner was involved in an accident with an automobile driven by defendant Bobby Jones and owned by defendant Betty Barrett. She suffered personal injuries, requiring medical attention and treatment, and

incurred other expenses incidental to the injuries. The Barrett vehicle was subsequently found to be uninsured. Richard Heisner and Protective settled the collision loss but subsequent negotiations between the plaintiff and Protective were unsuccessful concerning payment under the policy for her physical injuries. On March 21, 1967, the plaintiff filed a petition in the district court for Douglas County praying for damages against driver Bobby Jones and owner Betty Barrett. The next day, the attorney for the plaintiff notified Protective that suit had been filed and sent a copy of the petition. Protective did not consent to be bound by judgment resulting from the lawsuit. A default judgment for $7,500 was entered against defendant Betty Barrett and request was made to Protective by the plaintiff to pay that amount under its uninsured motorist's coverage. Protective advised that it did not consider the judgment binding upon it under the terms of the policy since it did not consent, and subsequently made an offer of settlement in the amount of $1,250. Protective also indicated that it was also willing to arbitrate in accordance with another provision in its policy. After a renewed demand by plaintiff that Protective satisfy the judgment for $7,500, Protective made formal demand for arbitration. Plaintiff, instead, commenced the garnishment proceedings from which this appeal is taken.

The portion of the uninsured motorist provisions in the insurance policy with which we are concerned requires Protective: "To pay all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury * * * caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured * * * is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement

between the insured * * * and the company or, if they fail to agree, by arbitration."

The arbitration clause provides that: "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile * * * or do not agree as to the amount * * * then, upon written demand of either, the matter * * * shall be settled by arbitration * * * and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators * * *."

Protective, in another provision, declines to be bound to a judgment without its consent: "No judgment against any person * * * alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled *unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.*" (Emphasis supplied.)

The trial court found that both the arbitration provision and the provision by which Protective, without its consent, declines to be bound in a separate action by the insured against the uninsured motorist, were invalid and ruled that Protective must pay the amount of the judgment. We affirm the judgment of the district court.

The arbitration clause in the policy compelling the parties to a contract to arbitrate and thus to oust the court of jurisdiction to settle the dispute is against public policy in Nebraska. This long-standing rule was first announced in German-American Ins. Co. v. Etherton, 25 Neb. 505, 41 N. W. 406, as follows: "Where a policy provides that the whole matter in controversy between the parties, including the right to recover at

all, shall be submitted to arbitration, the condition is void."

Later decisions which have followed this rule include: National Masonic Accident Assn. v. Burr, 44 Neb. 256, 62 N. W. 466; Schrandt v. Young, 62 Neb. 254, 86 N. W. 1085; Phoenix Ins. Co. v. Zlotky, 66 Neb. 584, 92 N. W. 736; Wilson & Co., Inc. v. Fremont Cake & Meal Co., 153 Neb. 160, 43 N. W. 2d 657.

Assaults on the doctrine of the invalidity of an arbitration clause are continually reasserted in new contexts in the development of the law. It is asserted that the novel situation present in the scheme of uninsured motorist's coverage permits an application of the doctrine without the violation of the public policy principles upon which the doctrine is founded. Perhaps the best answer to these assertions is found in the recent case of Barnhart v. Civil Service Employees Ins. Co., 16 Utah 2d 223, 398 P. 2d 873. In that case an identical provision and the same assertion was made to the Utah court. In deciding the same questions and arguments presented in the appellant's brief in this case, the court said as follows: "* * * all persons who desire to do so should also be encouraged to resort to the orderly processes of law for the purpose of settling disputes or grievances, real or imaginary, nor (and) that they should be allowed free access to the courts for that purpose. * * * It is thus to be seen that covenants which prevent a party from having access to court runs counter to both the expressed purpose and the spirit of our system of justice. This is further accented because such a provision purports to confer final judicial authority on private arbitrators and tends to divest the official courts of jurisdiction. This precludes them from fulfilling their responsibility of remaining available to adjudicate all controversies for anyone seeking justice. The reticence with which this should be done is further emphasized by realizing that such enforcement of finally binding arbitration cuts into the procedural safeguards our law provides in-

cluding the right to have a trial by jury if one so de-
sires, and the right of review on appeal."

Noting the difference in the position of the parties and
the practical reality of the execution of the insurance con-
tract, the Utah court further said there are: "* * *
many paragraphs of fine print, among which is immersed
the arbitration provision. The insured is usually simply
in the position of desiring to purchase some automobile
liability insurance, and insofar as the policy is concerned,
is not in a position to frame his own policy or to propose
conditions of his own. He is obliged to take the policy
that is offered with its various and sundry provisions,
many of which he is quite unaware of. With respect to
this arbitration, even if it were discovered, its meaning
and effect are somewhat uncertain even to lawyers and
judges, and presumably would be more so to laymen,
most of whom are not disposed either by training or
inclination to cope with the multifarious provisions of
such a formidable document. The insured is not re-
quired to read, nor to understand, nor to sign anything,
but only to pay his premium. The practical reality is
that the lay purchaser is in an inferior bargaining posi-
tion and simply accepts unilaterally the policy as pre-
pared by the company. Under such circumstances, it
would be inequitable and unjust to hold that he had
given up so important a privilege as his right to seek
justice in court unless it clearly appeared that he was
aware of what he was doing, and that he had voluntarily
made such a commitment."

The provision that the insurer is liable for the amounts
that the insured may be "legally" entitled to recover
from the tort-feasor is given special significance in rela-
tion to the arbitration provision by the Utah court. On
this point, that court said as follows: "* * * there are
others arising from the context of the contract itself
which also have a bearing on the conclusion we reach. It
recites that the defendant's liability is to pay the amount
the insured 'shall be *legally* entitled to recover as dam-

ages' from the operator of an uninsured automobile. The reasonable import of that language would seem to be that the amount plaintiffs may recover should be determined by the *processes of law* and thus by a court rather than by an arbitrator. Even more important in that connection is the fact that it is difficult to perceive how plaintiffs and the defendant could determine by arbitration what plaintiffs might be 'legally entitled' to recover from a third party, the uninsured motorist (Welcker). The latter, not being a party to the insurance contract, could not be bound by arbitration between the plaintiffs and defendant. Whether plaintiffs are legally entitled to recover from Welcker, and if so, the amount of damages, could only be determined between the plaintiffs and Welcker."

We, therefore, come to the conclusion that the compulsory arbitration clause involved in this insurance policy and considered in the context of an uninsured motorist's coverage is void and of no force and effect because it contravenes public policy expressed in German-American Ins. Co. v. Etherton, *supra,* in that it operates "to oust the courts of their legitimate jurisdiction." The problem then becomes: Does the insurer, Protective, have an available and adequate remedy to settle the issues of liability and damages giving rise to its contractual duty? We note here also as significant the contractual provision in which Protective becomes subrogated to the insured's right against the tort-feasor. Its coverage is limited and the insured's right of action may be a very valuable one both to recover damages in excess of the coverage and as a means of enforcing the contractual subrogation obligation of the insured. It, therefore, appears that if the clause in the policy requiring consent by the insurer before it becomes bound in an action between the insured and the uninsured motorist is valid, the insured, absent consent, would be compelled to bring two lawsuits to properly protect his rights. The insured would be required to sue the uninsured motorist to obtain

a judgment which may be in excess of the limits on the uninsured motorist's coverage he possesses. This lawsuit, not complying with the consent provision, would necessitate a second suit against the insurer to litigate the issues of liability and damages due from the insurer under the uninsured motorist's clause. Such a multiplicity and confusion of issues and the attendant expense should be avoided if possible. There is no issue in this case with reference to notice or the overreaching of Protective. The evidence shows that at all times Protective had full notice of the actions of the insured, of the suit against the tort-feasor, and that it deliberately took the position that it now takes in this case. The issue then is whether the "consent to be bound" provision is valid between the insured and Protective.

It seems to us apparent that, although separately printed and stated in the policy, the consent to be bound provision and the arbitration clause provision are mutually complementary and mutually reciprocal, and inducive to each other, and therefore must be stricken as a part of an arbitration scheme which is void as against public policy.

We hold that the uninsured motorist carrier, Protective, is fully protected as to all of its rights by permitting it to intervene in the litigation, as was present here, between the insured and the tort-feasor. Our intervention statute, section 25-328, R. R. S. 1943, provides: "Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences."

It is apparent that the questions litigated and the action between the insured and the uninsured tort-feasor for liability and damages, are the identical issues which determine liability of Protective under the insurance policy and which give rise to Protective's contractual duty to pay the insured. Protective has a direct interest in the matter of litigation within the meaning of our intervention statute.

Other courts faced with this same situation have come to the same conclusion. In State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig (Mo. App.), 364 S. W. 2d 343, 95 A. L. R. 2d 1321, intervention was permitted by the insurer in an action by its insured against an uninsured motorist. The court found that State Farm would be bound by the judgment on the issues of liability and damages giving rise to its contractual duty to pay sums which the insured is legally entitled to recover, and therefore concluded that the insurer may be bound by a judgment in the action within the meaning of Missouri's intervention statute.

In Dominici v. State Farm Mutual Automobile Ins. Co., 143 Mont. 406, 390 P. 2d 806, the Supreme Court of Montana struck down both an arbitration clause and a "consent to be bound" clause and suggested that intervention would protect the insurer against being required to pay under its contract based upon a judgment where liability and damages were not adequately litigated. The court said: "We must admit that this, or any other, insurance carrier is thrown upon the horns of a dilemma by this interpretation of this type of insurance contract. However, the harshness may be ameliorated through the use of intervention (See State of Missouri ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, Mo. App., 364 S. W. 2d 343), or possibly a plaintiff's use of joinder. This court appreciates the problems involved in such insurance coverage and the benefits to be derived by society in general. But we cannot countenance unreasonable obstructions which restrict

the use of the courts to be placed in the path of a just recovery. So long as proper and timely notice is given an insurance carrier so their rights are not prejudiced we do not feel that they are being imposed upon."

We therefore hold that an uninsured motorist's carrier may intervene in an action between its insured and the uninsured tort-feasor in order to protect itself on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy. It is further clear that our holding herein is conditioned upon and rests upon the compliance by the insured with the fundamentals of procedural due process. The carrier would not be bound unless given full notice and adequate opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor. To give the uninsured motorist's carrier the right to intervene is to give assurance that it may litigate the issues and at the same time avoid the multiplicity of suits and the harrassment of the insured by the necessity to litigate his rights twice. The terms of his contract and the uninsured motorist's statutes imply that they need to be litigated only once. We have recently held in Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133, that the proper interpretation of our statutes on uninsured motorist's liabilities is that the uninsured motorist clause is a *substitute* liability policy. It is true that this may place the carrier in an inconvenient position with respect to the issues of negligence and contributory negligence. We see no difference between this situation and the common situation where the carrier has coverage on two insureds involved in the same accident. Beyond that the carrier receives a separate premium for a policy which on its face requires it to be placed in an ambivalent or inconsistent position and it therefore calculatedly assumes the inconveniences that may arise from that situation. In any event, balancing these considerations, the inconvenience of the insurer must give way to the over-

riding public policy expressed in our statute protecting an insured against the danger of the uninsured motorist.

The insurer is bound by the law of the State of Nebraska and the applicable statutes. It was well aware that its arbitration clause was unenforceable and it is apparent that its "consent to be bound" clause was an integral and inducing provision to enforce the requirement of arbitration. It had full notice and an opportunity to intervene but instead chose to rely upon and to test a procedure dictated in its insurance policy provisions which would oust the courts of their jurisdiction and subject their own insured to the harassment and confusion of a multiplicity of suits which is contrary to the basic public policy of the state requiring the insurer to the extent of the coverage required to provide a substitute liability policy for the uninsured motorist tortfeasor.

The judgment of the district court is correct and is affirmed.

AFFIRMED.