466 P.2d 562

STATE of New Mexico, ex rel. DUKE CITY LUMBER COMPANY, Inc., a New Mexico Corporation; Joe Grevey, Jack Grevey, and Ira Liberman, Petitioners,

v.

Honorable Joe W. WOOD, Judge of the New Mexico Court of Appeals, Sitting As District Judge By Designation, Respondent.

No. 8963.

Supreme Court of New Mexico.

March 16, 1970.

Iden & Johnson, J. J. Monroe, Modrall, Seymour, Sperling, Roehl & Harris, George T. Harris, John R. Cooney, Albuquerque, for petitioners.

Arturo G. Ortega, William E. Snead, Albuquerque, for respondent.

## OPINION

WATSON, Justice.

This is an original proceeding in mandamus wherein petitioners seek to compel the respondent district judge by designation to stay the proceedings in the trial court pending arbitration.

On September 15, 1969, as Cause No. 15–799 in Socorro, New Mexico, William E. Terrell, d/b/a Little Tree Lumber Company, brought suit against petitioners seeking damages and cancellation of an agreement and supplemental agreements with Duke City Lumber Company, Inc. The original agreement provided as follows:

"Any controversy or claim arising out of or relating to this agreement, or the breach thereof, excepting default on the note, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof."

This provision was not changed by the supplemental agreements, and after the complaint was filed all of the defendants moved for an order staying further proceedings in Cause No. 15–799 pending arbitration of all issues raised in the complaint or such issues as the court should find subject to arbitration. This motion was denied because although the trial court found that Duke City Lumber Company, Inc. was entitled to arbitration of all issues relating to or involving a breach of the contract, and as to such issues it was valid, the court nevertheless held that it was without legal authority to require the plaintiffs against their will to submit the issues to arbitration.

The defendants then sought and obtained from this court an alternative writ of mandamus to which respondent has now shown cause for his refusal to stay the action below pending arbitration.

In Moore v. Collins, 24 N.M. 235, 173 P. 547 (1918), in Robinson v. Navajo Freight Line, Inc., 70 N.M. 215, 372 P.2d 801 (1962), and in Design Engineering Corporation v. Jenkins, 74 N.M. 603, 396 P.2d 590 (1964), this court upheld arbitration awards where the parties had submitted the questions to arbitration; but until now we have not been called upon to enforce an agreement to arbitrate against the will of one of the parties.

Petitioner relies upon the holding of the Colorado Supreme Court in Ezell v. Rocky Mountain Bean and Elevator Co., 76 Colo. 409, 232 P. 680 (1925), which was followed by Zahn v. District Court in and for County of Weld, Colo., 457 P.2d 387 (1969). In Ezell, supra, a nonsuit was ordered in an action brought for breach of a contract for the sale of beans because the plaintiff had failed to comply with the provisions in the contract requiring arbitration of any dispute arising under the contract. As in the case before us, the contracted arbitration was by virtue of common law and not under the arbitration statute. The Colorado court recognized the conflict of authorities but felt that public policy requiring arbitration had been established by the Colorado legislature in adopting its statute on arbitration (Ch. 27, Compiled Laws of Colo., 1922). The Colorado court said:

"Where the Legislature has provided a method of arbitration, the objection that such arbitration ousts the courts of jurisdiction is without merit. Zindorf Const. Co. v. Western American Co., 27 Wash. 31, 67 P. 374."

The Washington court in Zindorf, supra, however held that the agreement there complied with the Washington arbitration statute. Common law arbitration does not exist in Washington. Dickie Mfg. Co. v. Sound Const. & Eng. Co., 92 Wash. 316, 159 P. 129 (1916).

New Mexico's arbitration statute (§§ 22–3–1 to 22–3–8, N.M.S.A., 1953 Comp.) is somewhat similar to Colorado's. Neither statute is concerned with the enforcement of arbitration agreements made prior to the appearance of a dispute. We do not feel that our statute reflects a public policy requiring the enforcement of an arbitration agreement pertaining to future claims or controversies which relate to or may later arise under a contract. Utah has a statute which authorizes arbitration of existing disputes. In Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421 (1945), the court held that in accordance with "the almost universal rule" absent a statute to the contrary an agreement to arbitrate all future disputes would not bar a suit involving the dispute. In that case Justice Wolfe in a concurring opinion said of the effect of the Utah statute:

"By implication the legislature intended to lift the ban, imposed by the common law rule as hereinafter discussed, only in cases of existing disputes."

The case of Park Construction Company v. Independent School District, 209 Minn. 182, 296 N.W. 475, 135 A.L.R. 59 (1941), indicates that Minnesota will enforce agreements to arbitrate all questions which may later arise under a contract. Although arbitration had been accomplished in that case, the court (two justices dissenting) overruled numerous prior decisions to the contrary. The annotation following that case in 135 A.L.R., at page 79, shows that by the great weight of authority contracts to settle all future controversies are unenforceable. See also Restatement of Contracts, § 550 (1932).

Nevada also follows the minority. In United Ass'n of Journ. & App. of Plumbing, etc. v. Stine, 76 Nev. 189, 351 P.2d 965 (1960), damages were recovered from a labor union which struck before arbitrating as required by its contract. The Nevada court quotes 135 A.L.R. Annotation, supra, as follows:

"Since there is nothing immoral, or detrimental to the public, in stipulations to arbitrate any and all disputes that may arise between the parties to a private contract, it seems that the most that can be said in support of the rule against such stipulations is that they are, in general, unwise. But unwisdom is surely a strange ground for the invalidation of contracts."

We believe the effect of a ruling on the enforcement of agreements to arbitrate *all* controversies which may arise in the *future* does involve the public interest. After first pointing out that the courts "never refuse to enforce the awards of arbitrators, after a fair hearing in which both parties participate," Corbin in his work on Contracts, Vol. 6–A, § 1433 (1962), states:

"They [the courts] have practically never declared illegal an agreement to submit to arbitration a controversy that has already arisen. They have shown great favor to voluntary agreements of compromise and settlement. They have not held to be invalid agreements, made in advance of any controversy, to arbitrate a future dispute if the parties definitely specify the subject of such possible dispute and limit the power of the arbitrators accordingly.

"It seems, therefore, that the supposed vice of general and unlimited arbitration agreements lay in the fact that parties try to bind themselves to avoid the courts and to submit to private arbitration issues that at the time they do not have clearly in mind, which after they have arisen one of them is no longer willing to submit to the private arbitrators."

We agree with Professor Corbin, but there are situations where agreements to arbitrate have been held unenforceable as being contrary to public policy even though the parties could have readily foreseen the issue. See Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606 (1969), involving an agreement to arbitrate liability and amount of damages under the uninsured motorists provisions in an insurance policy. This

situation is not presented in the present case and may not arise in New Mexico in view of § 64–24–107, N.M.S.A., 1953 Comp. (1969 Supp.), which provides for an appeal "de novo" to the district court of the arbitration award under such policies. In this instance at least the legislature indicated its policy is not to completely oust the court.

The agreement in the present case containing the arbitration clause provides for a secured loan of $160,000.00 to Terrell from Duke City Lumber Company, Inc. which was evidenced by a note to be repaid with credit for the delivery of all lumber of a certain type and grade from Terrell's mill. The amount of credit depends upon a periodically adjusted price, and if the delivery falls below 500 MFB per month for three successive months the note is in default. In addition to security agreements, all present and future U. S. Forest Service leases and timber contracts are assigned to Duke City and escrowed with the Albuquerque National Bank; and Duke City is given an option of first refusal on Terrell's mill. After the original contract was signed, two supplemental contracts were executed. The first, reciting that Terrell had incurred additional obligations, provided for delivery of other lumber at adjustable prices; and the second provided for shipment to and storage by Duke City of certain inventoried lumber of Terrell's.

The parties could not have contemplated the terms of the supplemental agreements when they executed the original agreement containing the arbitration provision. Certainly they did not have clearly in mind the disputes that developed. The complaint is in five counts: The first is for damages for breach of an agreement to buy, or for misconduct of Duke City as a broker; the second was for conversion; the third was for damages caused by economic duress and conversion; the fourth brought in the individual defendants (not parties to the agreements) and alleged fraud and a conspiracy to gain control of plaintiff's property and operation; and the fifth was to require the escrow bank to deposit the documents it held with the court. All *relate* to the agreement; moreover the contract and the default on the note are related; yet the latter is excepted from the agreement to arbitrate.

Although we do not hold that a situation which later develops has any bearing on the question of the validity of an agreement at the time it is made, the facts here do present an example of the "unwisdom" of attempting to enforce agreements to arbitrate which would settle all future controversies.

We hold the agreement to arbitrate here voidable and unenforceable as against public policy. Having so determined we need not consider whether the mandamus action brought here was an appropriate remedy to enforce it.

The alternative writ having been improvidently issued is hereby discharged.

It is so ordered.

MOISE, C. J., and COMPTON and TACKETT, JJ., concur.