676 A.2d 1065

MARTIN S. ZIRGER, PLAINTIFF–APPELLANT, v. GENERAL ACCIDENT INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Argued January 2, 1996—Decided June 12, 1996.

328

*Roy T. Konray* argued the cause for appellant (*Ravich, Koster, Tobin, Oleckna, Reitman & Greenstein,* attorneys).

*Elliott Abrutyn* argued the cause for respondent (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Warren Usdin,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

The critical issue posed by this appeal is whether plaintiff's damages verdict against a third-party tortfeasor, awarded after a jury trial, collaterally estops General Accident Insurance Company (General Accident) from enforcing the arbitration clause included in the underinsured motorist (UIM) endorsement of plaintiff's automobile insurance policy. General Accident concedes that it knew of plaintiff's intention to proceed to a jury verdict on damages. The trial court granted plaintiff's motion for summary judgment, observing that General Accident had waived its right to proceed under the arbitration clause. The Appellate Division reversed in an unreported opinion, concluding that General Accident's knowledge of and acquiescence to plaintiff's intention to try the damages issue did not constitute a waiver of the insurer's right to demand arbitration.

■■■ We granted plaintiff's petition for certification. 142 *N.J.* 456, 663 *A.2d* 1363 (1995). After oral argument the parties informed us that the case had been settled, rendering moot the underlying legal issue. Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract. *See Oxfeld v. New Jersey State Bd. of Educ.*, 68 *N.J.* 301, 303–04, 344 *A.2d* 769 (1975); *Sente v. Mayor & Mun. Council of Clifton*, 66 *N.J.* 204, 205, 330 *A.2d* 321 (1974). On occasion, however, we will decide such appeals where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review. *See, e.g., Division of Youth & Family Servs. v. J.B.*, 120 *N.J.* 112, 118–19, 576 *A.2d* 261 (1990); *Matter of J.I.S. Indus. Serv. Co. Landfill*, 110 *N.J.* 101, 104–05, 539 *A.2d* 1197 (1988); *Matter of Conroy*, 98 *N.J.* 321, 342, 486 *A.2d* 1209 (1985); *Guttenberg Sav. & Loan Ass'n v. Rivera*, 85 *N.J.* 617, 622–23, 428 *A.2d* 1289 (1981). The issue before us is of that nature, involving as it does the enforceability of a standard arbitration clause in the UIM endorsement included in automobile insurance policies, but evading review because of the possible reluctance by the industry or private litigants to press for resolution of the question. Accordingly, notwithstanding its mootness we undertake to resolve the issue.

I

The pertinent facts are essentially undisputed. Plaintiff sustained personal injuries in an accident with an automobile operated by Joseph Filsaime on January 4, 1991. Filsaime's liability policy provided only $15,000 in coverage. Zirger's automobile policy issued by General Accident provided UIM coverage of $1,000,000. General Accident's UIM endorsement contained a standard arbitration clause widely used in the industry. It read in part:

ARBITRATION

  a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of ... an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by

that "insured," then the matter may be arbitrated.... Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third.

The endorsement also included a standard coverage provision:

A. COVERAGE

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured," or "property damage" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle."

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

Zirger instituted a negligence action against Filsaime to recover damages for the injuries sustained in the accident. In February 1993, Zirger's counsel informed General Accident about the limit of liability on Filsaime's policy, requesting General Accident's permission to settle with Filsaime for the policy limit in order to pursue a UIM claim under Zirger's policy. Zirger's counsel also demanded arbitration pursuant to the UIM endorsement, and selected an arbitrator. General Accident also selected its arbitrator. A few months later General Accident consented to Zirger's proposed settlement of his claim against Filsaime for the policy limit.

That settlement never occurred. After trial on liability only, a jury determined that Filsaime was liable for Zirger's injuries. Filsaime's insurer then offered to settle the case for $15,000, the policy limit. Zirger's counsel contacted General Accident's counsel, stating that he was inclined to reject the offer and proceed to a jury trial on damages. General Accident's attorney acknowledged that he "was actually somewhat confused as to exactly why [Zirger's attorney] was calling me," but confirmed that he informed Zirger's attorney "that if he chose to do so he should proceed to obtain a jury verdict on the question of damages." General Accident's attorney stressed that he never waived the contractual right to arbitrate the damages issue, and that his informal authorization to proceed to trial on damages was of no

significance because General Accident was not authorized to preclude plaintiff from presenting his claim for damages to a jury.

The jury awarded Zirger $400,000. Zirger then demanded payment of that amount from General Accident, reduced by the $15,000 recovery against Filsaime. When General Accident refused payment, Zirger instituted this action.

The parties filed cross-motions for summary judgment. The trial court granted Zirger's motion, concluding that General Accident impliedly had consented to the litigation of Zirger's claim against Filsaime, thereby waiving its contractual right to arbitration. The Appellate Division reversed, concluding that General Accident's acquiescence to plaintiff's pursuit of a damage claim was not sufficiently unequivocal and decisive to constitute a waiver of the contractual right to arbitration. That court also determined that General Accident could not be collaterally estopped from relitigating the damages question because its interests and Filsaime's were not sufficiently similar to conclude that Filsaime's litigation of the damages claim provided adequate representation of General Accident's interest in minimizing its ultimate liability under the UIM endorsement.

## II

Simply stated, the question posed is whether a plaintiff, who has tried to conclusion in the Law Division his or her claim against a tortfeasor and has received an award of damages, can nevertheless be compelled to relitigate the issue of damages before an arbitration panel pursuant to the arbitration clause in the UIM endorsement of the plaintiff's automobile liability policy. The carrier's insistence on arbitration undoubtedly derives from its expectation that the arbitration damages award will be less than the jury verdict, and the carrier relies on the unambiguous provisions of the insurance contract to support its arbitration demand. Plaintiff asserts that the contractual provision should not override the public policy interest in avoiding duplicative and unnecessary relitigation of the damages issue, contending that the carrier's

interest in minimizing damages was represented adequately by the tortfeasor's carrier that defended the Law Division action. That contention was acknowledged by the trial court in granting Zirger's motion for summary judgment: "Defendant Filsaime's attorney presented a full defense with the single goal in mind—to limit Mr. Filsaime's liability—precisely the same goal the defendant insurer would have during arbitration."

Our courts have emphasized that the insurance contract ordinarily should govern the resolution of disputes arising pursuant to UM and UIM endorsements. "[The insured claimant's] rights under a UM endorsement are governed by the contract with the UM carrier." *Riccio v. Prudential Property & Casualty Ins. Co.,* 108 *N.J.* 493, 499, 531 *A.*2d 717 (1987); *accord Allgor v. Travelers Ins. Co.,* 280 *N.J.Super.* 254, 259, 654 *A.*2d 1375 (App.Div.1995) ("A claim presented under a UIM endorsement is essentially one of contract.")

Although the relationship of the insurer and insured is contractual, the source of the obligation to offer UIM coverage is statutory. Prior to the amendments enacted in 1983, *L.* 1983, *c.* 65, § 5, and *L.* 1983, *c.* 362, § 1, *N.J.S.A.* 17:28–1.1 imposed on automobile insurers the obligation to provide uninsured motorist (UM) coverage in every automobile liability policy in limits of not less than $15,000 per person and $30,000 per accident. UIM coverage was not required. The 1983 amendments imposed for the first time a duty on insurers to offer each insured the option of purchasing coverage up to the limits of liability coverage, but not exceeding $250,000 per person and $500,000 per accident against the risk of injury caused by underinsured tortfeasors or a single limit of $500,000. See *N.J.S.A.* 17:28–1.1(b). The 1983 amendments reflected a legislative determination that the risk that victims of automobile accidents would be inadequately compensated for their injuries is attributable to underinsured drivers as well as uninsured drivers. *See Longworth v. Van Houten,* 223 *N.J.Super.* 174, 177, 538 *A.*2d 414 (App.Div.1988). For an insured who exercises the UIM option, the practical effect of the coverage offered

pursuant to the 1983 amendments is to require an insurer, to the extent of coverage, to pay its insured the damages that the insured is entitled to recover from the underinsured tortfeasor, less the amount of the tortfeasor's coverage. *Longworth, supra,* 223 *N.J.Super.* at 177–78, 538 *A.*2d 414. Accordingly, the mandatory availability of UIM coverage for all insureds reflects a strong public-policy interest in providing through automobile insurance adequate compensation to New Jersey motorists for injuries sustained in accidents with underinsured motorists.

The strong public-policy interests underlying the statutorily mandated availability of UM and UIM coverage has prompted courts in several states to override and invalidate provisions in the UM/UIM insurance contract that unreasonably obstruct an insured's claim for coverage. The "consent to sue" provision is a notable example. As it appears in General Accident's UM/UIM endorsement, the clause states: "Any judgment for damages arising out of a 'suit' brought without our written consent is not binding on us." Most courts that have considered the enforceability of consent to sue clauses in UM/UIM endorsements have concluded that they are contrary to public policy and therefore invalid. As one court observed:

> A consent to sue clause, however, dilutes, conditions, and limits the character of the coverage mandated in the statute. An insurer, by refusing to be bound, can force an insured, who has already obtained a judicial determination of his losses against the uninsured motorist, to relitigate liability and damages as a condition of recovery. At a minimum, this dilutes coverage by requiring insureds to expend greater resources in order to recover an amount they have already established they are entitled to.
>
> [*Briggs v. American Family Mut. Ins. Co.,* 833 *P.*2d 859, 862 (Colo.Ct.App.1992) (citation omitted).]

A number of other courts have reached the same conclusion. *See, e.g., MFA Mut. Ins. Co. v. Lovins,* 248 *F.Supp.* 108, 111–12 (E.D.Ark.1965); *Vernon Fire & Casualty Ins. Co. v. Matney,* 170 *Ind.App.* 45, 351 *N.E.*2d 60, 65–67 (1976); *Indiana Ins. Co. v. Noble,* 148 *Ind.App.* 297, 265 *N.E.*2d 419, 435–36 (1970); *Andeen v. Country Mut. Ins. Co.,* 70 *Ill.App.*2d 357, 217 *N.E.*2d 814, 816–17 (1966), *cert. denied,* 385 *U.S.* 1036, 87 *S.Ct.* 775, 17 *L.Ed.*2d 682 (1967); *Levy v. American Auto. Ins. Co.,* 31 *Ill.App.*2d 157, 175

N.E.2d 607, 610–11 (1961); *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 436 *A.2d* 465, 471–78 (1981); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig,* 364 *S.W.2d* 343, 345–46 (Mo.Ct.App. 1963); *Dominici v. State Farm Mut. Auto. Ins. Co.,* 143 *Mont.* 406, 390 *P.2d* 806, 808–10 (1964); *Boughton v. Farmers Ins. Exch.,* 354 *P.2d* 1085, 1089–90 (Okla.1960). *See generally* Alan I. Widiss, *A Guide to Uninsured Motorist Coverage* §§ 7.4–7.8 (1969) (observing that courts have frequently invalidated consent to sue clauses in jurisdictions that declined to enforce arbitration clauses in UM/UIM endorsements).

Courts in a number of states have declined on various grounds to enforce the standard arbitration clause contained in UM/UIM endorsements. In some states the common law rule precluding specific enforcement of agreements to arbitrate has not been modified; in others, the common law restriction has been modified only to permit enforcement of agreements to arbitrate *present* disputes, a modification considered insufficient to render enforceable the UM/UIM's endorsement requiring arbitration of unidentified future disputes. *See* Widiss, *supra,* § 6.3; *see, e.g., MFA Mut., supra,* 248 *F.Supp.* at 110; *Indiana Ins. Co., supra,* 265 N.E.2d at 426–27; *Levy, supra,* 175 *N.E.2d* at 610; *Craig, supra,* 364 *S.W.2d* at 345–46; *Dominici, supra,* 390 *P.2d* at 809; *Heisner v. Jones,* 184 *Neb.* 602, 169 *N.W.2d* 606, 609 (1969); *Boughton, supra,* 354 *P.2d* at 1089.

The reluctance of courts to enforce "consent to sue" and arbitration provisions in UM/UIM endorsements undoubtedly reflects the concern that such provisions unreasonably obstruct an insured's right to recover benefits under the policy. Even those courts willing to enforce arbitration clauses contained in UM/UIM endorsements are reluctant to do so if the insured has already litigated his or her damage claim against the uninsured or underinsured tortfeasor, on notice to the UM/UIM carrier. Considerations of fairness and avoidance of redundant litigation often have persuaded courts to hold that UM/UIM insurers are collaterally estopped from challenging damage judgments obtained in litigated

proceedings against the tortfeasor, of which the carrier had notice, whether or not the policy included an enforceable arbitration clause. For example, in *Allstate Insurance Co. v. Pietrosh,* 85 *Nev.* 310, 454 *P.*2d 106 (1969), the Nevada Supreme Court held that the UM insurer was bound by the damage judgment obtained after trial against the uninsured tortfeasor, notwithstanding the policy's arbitration clause, because the insured had notified the carrier of the litigation. The court observed:

> The aim of this endorsement is to preclude the binding effect of a judgment against the uninsured motorist upon the insurance company. The notion is that although the insured may litigate against the uninsured motorist without the insurance company's permission, any judgment secured will not obviate the necessity for him to arbitrate with or sue his company in order to collect under the policy. The provision is reasonable when the insurance company is not notified of the litigation and is, therefore, without compulsion to intervene, demand arbitration, or take other steps. Its enforcement may be appropriate in a case where the insured secures a default judgment against the uninsured motorist, since an adversary determination of liability and damages is absent. However, where the company is given notice of the action, has the opportunity to intervene, and judgment is thereafter obtained against the uninsured motorist in an adversary proceeding, we hold that the company should be bound thereby despite the contrary policy provision.

> [454 *P.*2d at 110–11 (citation omitted).]

*See also Employers Mut. Cos. v. Nordstrom,* 495 *N.W.*2d 855, 858–59 (Minn.1993) (holding that tort judgment against underinsured tortfeasor binds carrier not by estoppel but by conclusively establishing without need for arbitration amount insured is "legally entitled" to recover); *Wells v. Hartford Accident & Indem. Co.,* 459 *S.W.*2d 253, 259 (Mo.1970) (holding that uninsured motorist carrier with notice and opportunity to intervene in suit instituted by insured against uninsured tortfeasor in which liability and damages are litigated is estopped from relitigating those issues); *Bryant v. Clark,* 62 *Ohio St.*3d 485, 584 *N.E.*2d 687, 689–90 (1992) (holding that insurer that consents to entry of insured's default judgment against uninsured tortfeasor, sends counsel to attend damages hearing, and fails to request arbitration until entry of judgment for damages waives right to arbitration and is bound by judgment for damages); *Keel v. MFA Ins. Co.,* 553 *P.*2d 153, 157–59 (Okla.1976) (holding that because uninsured motorist carrier

with notice of insured's suit against uninsured tortfeasor may intervene in such litigation, carrier is bound by judgment against uninsured motorist, but ruling would apply only prospectively); *State ex rel. Motorists Mut. Ins. Co. v. Broadwater,* 192 *W.Va.* 608, 453 *S.E.*2d 591, 596–97 (1994) (holding that UIM carrier on notice of insured's suit against underinsured motorist that proceeds to trial on damages, notwithstanding settlement for policy limits with tortfeasor's insurer, was bound by judgment for damages entered after jury trial); *Meyer v. Classified Ins. Corp. of Wis.,* 179 *Wis.*2d 386, 507 *N.W.*2d 149, 154–55 (App.1993) (holding that where UIM carrier, joined as defendant in insured's suit against underinsured tortfeasor that settles for policy limits, delays demand for arbitration until after court-imposed deadline for motions, carrier waives right of arbitration and becomes bound by jury verdict on damages), *review denied,* 513 *N.W.*2d 406 (Wis. 1994); *cf. Shevlin v. Prudential Commercial Ins. Co.,* 256 *N.J.Super.* 691, 701–02, 607 *A.*2d 1062 (Law Div.1991) (holding that insured who obtained jury verdict against tortfeasor on liability and damages is bound by verdict and cannot compel UM/UIM carrier to arbitrate damages); *Poray v. Royal Globe Ins. Co.,* 90 *N.J.Super.* 454, 463, 217 *A.*2d 916 (Law Div.1966) (holding that UM/UIM carrier that participated in consolidated suits instituted by insured and tortfeasor against each other had waived right of arbitration and was bound by jury verdict).

## III

The doctrine of collateral estoppel, or issue preclusion, "bars relitigation of any issue [that] was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez,* 75 *N.J.* 181, 186, 380 *A.*2d 1128 (1977). Traditionally, courts have confined application of the doctrine to cases in which the parties were the same in both actions, on the assumption that that restriction on the scope of collateral estoppel promoted fairness and simplification. *Id.* at 188, 380 *A.*2d 1128. The modern trend favors modification of the strict rule of mutuality of parties, in favor of a more pragmatic,

case-by-case approach that we anticipated in *McAndrew v. Mular-chuk*, 38 *N.J.* 156, 161, 183 *A.*2d 74 (1962), observing: "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant." In *United Rental Equipment Co. v. Aetna Life & Casualty Ins. Co.*, 74 *N.J.* 92, 376 *A.*2d 1183 (1977), we adopted a standard for applying collateral estoppel in cases where the parties to the prior action are not identical to the parties in the current action: "A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue." *Id.* at 101, 376 *A.*2d 1183 (quoting *Restatement (Second) of Judgments* § 88 (Tentative Draft No. 2, 1975)). The American Law Institute adopted that standard without significant change in the final version of the Restatement. *See Restatement (Second) of Judgments* § 29 (1982).

■ Although mutuality of parties no longer is an essential condition of collateral estoppel, the party against whom collateral estoppel is to be invoked must have been in "privity" with a party in the first action. *Wunschel v. City of Jersey City*, 96 *N.J.* 651, 658, 477 *A.*2d 329 (1984). The concept of privity, as well as its parameters, are necessarily imprecise: "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.) (Goodrich, J., concurring), *cert. denied*, 340 *U.S.* 865, 71 *S.Ct.* 87, 95 *L.Ed.* 632 (1950). "A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Collins v. E.I. DuPont de Nemours & Co.*, 34 *F.*3d 172, 176 (3rd Cir.1994) (applying New Jersey law); *see also Moore v. Hafeeza*, 212 *N.J.Super.* 399, 403–

04, 515 A.2d 271 (Ch.Div.1986) ("Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right. . . .").

We need not probe the outer limits of the privity doctrine to conclude that ordinarily there will be a sufficient identity of interests between the third-party tortfeasor's carrier and the UM/UIM carrier to justify according preclusive effect to the result of a damages verdict in the litigation between the injured plaintiff and the tortfeasor. We intimated in *Parks v. Colonial Penn Ins. Co.*, 98 *N.J.* 42, 47–49, 484 A.2d 4 (1984), that policies of issue preclusion could suitably be adapted to UM/UIM litigation in order to avoid relitigation of issues tried in a prior action against the tortfeasor. Parks, a passenger, was injured in a single-car accident and brought suit against the uninsured driver and the owner, who was insured by INA. Parks had coverage with Colonial Penn, including UM/UIM coverage. After a trial on liability only, the trial court granted Parks's motion for a directed verdict against the driver, granted the owner's motion for judgment against Parks on the ground of no agency, and also granted the owner's motion for judgment on the driver's crossclaim for indemnification and contribution. In addition, the trial court submitted to the jury the extraneous issue of the driver's permissive use of the automobile (a condition of INA's coverage), and the jury determined that no permission to operate the car had been granted. Based on that jury determination, Parks attempted to institute an arbitration proceeding under his policy alleging that Colonial Penn was obligated to provide coverage because the driver had been found to be uninsured. Colonial Penn refused to arbitrate, contending that INA's coverage remained in issue. Parks then filed a declaratory judgment action to compel Colonial Penn to arbitrate, and Colonial Penn filed a third-party complaint against INA to establish coverage. The trial court granted INA's motion to dismiss the third-party complaint, relying on the preclusive effect of the jury's resolution of the permissive use issue, and

also granted Parks's motion for summary judgment against Colonial Penn on the same ground. The Appellate Division affirmed in an unreported opinion. This Court reversed, concluding that to apply principles of issue preclusion to bar Colonial Penn from relitigating the question of INA's coverage would be improper:

> Nobody in the Parks liability case was a privy of Colonial Penn—surely not Parks, to whom it is a matter of some indifference whether he be paid by INA or Colonial Penn, and just as surely not Ajamian or Skelton, with neither of whom Colonial Penn enjoyed any relationship save possibly as a potential adversary in litigation. A fair application of doctrines of issue preclusion would not foreclose Colonial Penn's right to litigate the question of coverage under these circumstances.
>
> [*Id.* at 47, 484 A.2d 4 (citations omitted).]

Nevertheless, the Court recognized

> that there are strong arguments for policies of issue preclusion that will avoid multiplicity of litigation over the same issue. Yet it remains essential that the party to be bound by the former adjudication have fair notice and be fairly represented in the prior proceeding. . . .
>
> *     *     *     *     *     *     *     *
>
> In addition, it is quite possible that in an initial litigation of the liability claim, an injured claimant would have a sufficient stake—the amount of coverage, for instance—in a result that would secure the insurance coverage of the liability carrier rather than that of the uninsured motorist carrier and, consequently, would have an interest in perfecting a liability claim that established not only agency but permissive use as well. In that situation, there could be sufficient privity between the claimant and the UM carrier so that it would not be unfair to bind the latter to any jury determination of lack of permissive use. In any event, to avoid any question of procedural fairness, it should be possible to notify the UM insurance carrier of the pendency of the negligence case and the likelihood that the issue of permissive use implicating liability insurance coverage would be presented for determination. The UM carrier, given the opportunity to intervene or otherwise protect its interests, would then properly be bound by the jury's determination of that issue. These approaches would certainly further the salutary goals of consolidating the litigation of related controversies and avoiding inconsistent results.
>
> [*Id.* at 47–48, 484 A.2d 4 (citations omitted).]

The Court's emphasis in *Parks* on the UM/UIM carrier's right to intervene as a means of protecting its interests is especially pertinent to the question of avoiding relitigation of a plaintiff's claim for damages against the third-party tortfeasor. Our cases have established that plaintiffs are obligated to provide notice to their UM/UIM carrier of the institution of suit against the tortfea-

sor. *Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 174, 652 *A.*2d 162 (1995). Our Court Rule on permissive intervention, *R.* 4:33–2, is to be liberally construed by trial courts, *State v. Lanza,* 39 *N.J.* 595, 600, 190 *A.*2d 374 (1963), *cert. denied,* 375 *U.S.* 451, 84 *S.Ct.* 525, 11 *L.Ed.*2d 477 (1964), with a view to whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties, *Looman Realty Corp. v. Broad St. Nat'l Bank of Trenton,* 74 *N.J.Super.* 71, 78, 180 *A.*2d 524 (App.Div.), *certif. denied,* 37 *N.J.* 520, 181 *A.*2d 782 (1962), and whether intervention will eliminate the need for subsequent litigation. *Division of Youth & Family Servs. v. Torres,* 185 *N.J.Super.* 234, 245, 447 *A.*2d 1372 (Juv. & Dom. Rel. Ct.1980), *aff'd o.b.,* 185 *N.J.Super.* 182, 447 *A.*2d 1343 (App.Div.1982). Other state courts have acknowledged the right of a UM/UIM carrier to intervene in the plaintiff's action against the third-party tortfeasor. *See, e.g., Briggs, supra,* 833 *P.*2d at 863; *Webb, supra,* 436 *A.*2d at 475; *Vernon Fire, supra,* 351 *N.E.*2d at 64–65; *Indiana Ins. Co., supra,* 265 *N.E.*2d at 431, 433; *Wells, supra,* 459 *S.W.*2d at 259–60; *Heisner, supra,* 169 *N.W.*2d at 611; *Keel, supra,* 553 *P.*2d at 157–59. As the Supreme Court of Nebraska observed in *Heisner, supra:*

> We therefore hold that an uninsured motorist's carrier may intervene in an action between its insured and the uninsured tort-feasor in order to protect itself on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy. It is further clear that our holding herein is conditioned upon and rests upon the compliance by the insured with the fundamentals of procedural due process. The carrier would not be bound unless given full notice and adequate opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor. To give the uninsured motorist's carrier the right to intervene is to give assurance that it may litigate the issues and at the same time avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice.
>
> [169 *N.W.*2d at 611.]

Subject to the discretionary authority of trial courts to resolve specific motions for intervention, we hold that UM/UIM carriers ordinarily may intervene in their insured's action against the third-party tortfeasor. We are satisfied that case management

issues, such as the designation of trial counsel, will be addressed and resolved by trial courts.

The ability to intervene in the litigation against the third-party tortfeasor persuades us to hold, as have the majority of state courts that have considered the issue, that a UM/UIM carrier that intervened in the underlying tort litigation, or declined to exercise its opportunity to intervene, is barred from enforcing the standard arbitration clause in the UM/UIM endorsement. We apply our holding only prospectively to cases in which the third-party action is tried after the effective date of our decision and the UIM carrier is afforded notice and adequate opportunity to intervene. We acknowledge that to apply principles of collateral estoppel to bind the UM/UIM carrier to the liability and damages verdict in the underlying tort litigation may constitute a modification of the usual requirements for privity, but we are convinced that the UM/UIM carrier's interests can be protected adequately in the underlying action and that the common interests of the UM/UIM carrier and the tortfeasor's carrier effectively serve the purposes of the privity requirement. As the Supreme Court of Nevada noted in *Pietrosh, supra:*

> We recognize that our holding on this point subverts the requirement of privity normally present with an application of the doctrines of res judicata or collateral estoppel. Privity is absent here. Our holding also forces intervention. However, the avoidance of multiple litigation carries the greater weight.

[454 *P.*2d at 111.]

We also note the potential anomaly of the use of arbitration as a supplement to an adjudication in court. The basic rationale for the use of arbitration as a means of resolving disputes is that it is quicker and less expensive than litigation:

> Arbitration is "a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law," and its object is "the final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties." Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, "meant to be a substitute for and not a springboard for litigation."

[*Barcon Assocs. v. Tri–County Asphalt Corp.,* 86 *N.J.* 179, 187, 430 *A.*2d 214 (1981) (citations omitted).]

The advantages of arbitration evaporate when arbitration is used not as a substitute for litigation, but as a supplement to litigation. Used in that manner, a procedure designed to expedite dispute resolution is transformed into a mechanism for delaying and obstructing final resolution of disputes:

A modern system of judicial administration should provide not only for the efficient disposition of cases within the judicial system, but also should contemplate alternative methods of dispute resolution outside the system. One such alternative method is arbitration. Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration. Thus, our construction of the scope of arbitration clauses is consistent with the policy of favoring commercial arbitration as a speedy and inexpensive method for settling disputes.

[*Ohio Casualty Ins. Co. v. Benson,* 87 *N.J.* 191, 199, 432 *A.*2d 905 (1981) (citation omitted).]

█  We invalidate the contractual arbitration clause only to the extent that it requires an arbitration proceeding that duplicates the underlying litigation of the tort claim. For example, if the underlying tort claim does not result in an adjudication of damages, as is often the case, the arbitration clause in the UM/UIM policy will be given full force and effect. Nevertheless, we conclude that adherence to basic principles of contract law must yield to an overriding public interest in the efficient and expeditious resolution of UM/UIM claims. We often have emphasized our policy of construing legislation involving automobile insurance to effect " 'the broadest protection of auto accident victims consistent with the language of the pertinent statute.' " *Ciecka v. Transamerica Ins. Group,* 81 *N.J.* 421, 428, 409 *A.*2d 272 (1979) (quoting *Motor Club of Am. Ins. Co. v. Phillips,* 66 *N.J.* 277, 293, 330 *A.*2d 360 (1974)).

Our objective is the same when confronted with insurance policy provisions that unreasonably condition or unfairly obstruct the availability of benefits from coverage that the Legislature requires insurance companies to offer. In our view, an insurance policy provision that would require an insured to litigate to conclusion the issues of liability and damages in a personal-injury action

against the tortfeasor, on notice to the UM/UIM carrier, only to be required to relitigate those same issues in an arbitration proceeding with the UM/UIM carrier, cannot be reconciled with the policy considerations that prompted the Legislature to mandate the availability of UM/UIM coverage for all insureds. Just as the Legislature's purpose can be thwarted by unreasonable restrictions on or exclusions from coverage, *Ciecka, supra,* 81 *N.J.* at 427–28, 409 *A.*2d 272, so too is the legislative goal obstructed by conditions that delay unreasonably the payment of the benefits that UM/UIM coverage was intended to provide.

### IV

We reverse the judgment of the Appellate Division.

*For reversal*—Chief Justice, WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, COLEMAN and STEIN—7.

*Opposed*—None.