**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1051-23

WINE OF JAPAN
IMPORT, INC. and SANWA
TRADING CO., INC.,

     Plaintiffs-Appellants,

v.

SAPPORO U.S.A., INC.,
MASASHI MINAMI, ANDREW
MURPHY, and TAKESHI
MIYAHARA,

     Defendants-Respondents.

_____

Argued September 11, 2024 – Decided September 24, 2024

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2143-22.

James Philip Chou argued the cause for appellants (Saul Ewing LLP, attorneys; James Philip Chou and Marshall O. Dworkin (Moritt Hock & Hamroff LLP), on the briefs).

Andrew B. Kratenstein (McDermott Will & Emery LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents (Jessica Greer Griffith (McDermott Will & Emery LLP) and Andrew B. Kratenstein, attorneys; Jessica Greer Griffith and Andrew B. Kratenstein, of counsel and on the brief).

Kyle Vellutato argued the cause for amicus curiae Beer Wholesalers' Association of New Jersey (O'Toole Scrivo, LLC, attorneys; Kyle Vellutato and Antonio Vayas, of counsel and on the brief).

PER CURIAM

Plaintiffs Wine of Japan Import, Inc. (WOJ), and Sanwa Trading Co., Inc., (Sanwa), appeal from the October 23, 2023 Law Division order dismissing their complaint and granting defendants' Sapporo U.S.A., Inc., Masashi Minami, Andrew Murphy, and Takeshi Miyahara (Sapporo U.S.A.) motion to compel arbitration. Based on our review of the record and applicable legal principles, we dismiss the appeal as moot.

I.

Sapporo Holdings is a Japanese company that brews Sapporo beer. In 1984, Sapporo Holdings founded Sapporo U.S.A. Sapporo U.S.A. relies on distributors to sell Sapporo products nationally. Sapporo U.S.A. works with thirteen distributors that sell Sapporo beer in the New York City metropolitan area including New Jersey. These distribution agreements are non-exclusive.

2

Thus, distributors compete with each other on service, brand selection, and other commercial factors. Plaintiffs are two such distributors who entered into a Wholesaler Agreement (Agreement) with Sapporo U.S.A. to distribute Sapporo products in New York and New Jersey.

WOJ was founded in 1973, specializing in the wholesale distribution of ultra-premium Japanese sake, spirits, and beer in the United States. Sanwa was established in 1984 as WOJ's importer of alcohol and commercial foodstuffs. WOJ has a forty-five-year relationship with Sapporo U.S.A. and helped introduce the Sapporo brand in the United States.

The relationship between Sapporo U.S.A. and plaintiffs is governed by the most recent Agreement entered into by the parties in March 2005. The Agreement defines plaintiffs' "non-exclusive" territory as certain counties in the metropolitan New York area including New Jersey (the Territory). Sapporo U.S.A. also works with other distributors that sell Sapporo beer in the Territory.

In view of plaintiffs' importance to the success of Sapporo's brand in their Territory, section 1(a) of the Agreement states:

> Sapporo and [plaintiffs] recognize and agree that it is essential to their mutual objectives under this Agreement that [plaintiffs] maintain financial and competitive capabilities to achieve efficient and effective distribution of Sapporo's products in [plaintiffs'] Territory . . . and to assure continued

3

A-1051-23

protection of the high quality and integrity of Sapporo products.

To advance that goal, under section 1(d) of the Agreement, plaintiffs agreed to use their "best efforts" to maximize the sale and distribution of Sapporo products in their territory. Specifically, plaintiffs agreed:

> [t]o use [their] best efforts to promote the sale and distribution of Sapporo's Products to all possible accounts in its market area. [Plaintiffs] shall furnish and maintain at [their] own expense the sale and distribution organization suitable and sufficient for the proper effective performance of [their] obligations herein. [Plaintiffs] shall conduct such sales, promotional and advertising activities reasonably necessary to fulfill [their] obligations[.]

There is no definition of "best efforts" in the Agreement.

Under section 6(b) of the Agreement, either party has the right to terminate the Agreement on sixty-days prior written notice so long as the party giving notice "reasonably believes that such termination will be mutually beneficial to both parties."

Additionally, and central to the dispute before the trial court, the Agreement contained a "Governing Law and Arbitration" provision. Section 11 states in pertinent part:

> This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Any controversy or claim arising out of or

4

relating to this Agreement shall be settled by arbitration in New York, New York pursuant to the rules and regulations of the American Arbitration Association. Any party seeking arbitration shall notify the other party and set forth the reasons such arbitration is being sought. . . . Judgment on the award of the arbitrators may be entered by any court having jurisdiction to do so. Sapporo and [plaintiffs] hereby irrevocably consent to the jurisdiction of the State of New York over their person and waive any defense based on improper venue, inconvenient venue arbitration shall be deemed a breach of this Agreement.

Sapporo U.S.A. asserted that plaintiffs' sales performance began to decline sometime before the onset of the COVID-19 pandemic in 2020.[1] Specifically, it alleged plaintiffs' sales volume decreased over twenty percent from 2019 to 2022. In September 2022, Sapporo U.S.A. senior executives met with plaintiffs and expressed concern that plaintiffs' sales performance was substantially worse than other distributors' sales performance in the Territory. Sapporo U.S.A. representatives shared sales data demonstrating this disparity.

---

[1] Plaintiffs argue that any purported decline in their sales figures regarding Sapporo products was a result of natural market conditions and not their alleged failure to use "best efforts." They note the COVID-19 pandemic particularly devastated Asian restaurants in New York City, which resulted in the closure of seven of their retailer-customers in New Jersey and 129 retailer-customers in New York. These closures had a disproportionate impact on plaintiffs' sales volumes.

A-1051-23

Plaintiffs allege the meeting was originally planned for Sapporo to introduce its new vice president of sales. However, they contend Sapporo U.S.A. used this meeting as an "ambush" to execute a preconceived plan to terminate the Agreement with plaintiffs.

Shortly thereafter, Sapporo U.S.A., by letters dated October 4, 2022, sent "Notice[s] of Deficiency and Pending Termination" of the Agreement to plaintiffs. Sapporo U.S.A. advised plaintiffs that they violated the Agreement by failing to use their best efforts to promote the sale and distribution of Sapporo products in their respective territory. Sapporo U.S.A. requested that plaintiffs provide a written plan of corrective action to cure the sales deficiencies by October 24, 2022. The termination notices also stated that Sapporo U.S.A. was willing to discuss the sale of plaintiffs' distribution rights to another distributor if plaintiffs preferred.

Plaintiffs responded to the termination notices denying any breach of the Agreement and invited Sapporo U.S.A. to make an offer for their distribution rights. The parties were unable to agree on the issue of the sale of the distribution rights.

Plaintiffs filed a complaint and an order to show cause seeking a preliminary injunction in December 2022. In January 2023, Sapporo U.S.A.

6

filed opposition to the request for a preliminary injunction and also moved to compel arbitration and to dismiss the complaint. After oral arguments, the trial court granted the application for a preliminary injunction and reserved judgment on Sapporo U.S.A.'s motion to compel arbitration.

On October 23, 2023, the trial court issued an order and written opinion granting Sapporo U.S.A.'s motion to compel arbitration, dismissing plaintiffs' complaint with prejudice, and directed "[t]he parties shall submit this dispute to binding arbitration before the American Arbitration Association in . . . New York pursuant to Section 11 of the . . . Agreement . . . ." Plaintiffs did not initiate arbitration.

On November 14, 2023, Sapporo U.S.A. withdrew the notices of deficiency and pending termination of the Agreement to "end [the parties'] dispute and continue operating under the . . . Agreement." Despite Sapporo U.S.A. withdrawing the notices to terminate the Agreement, plaintiffs filed a notice of appeal in December 2023.

A-1051-23

## II.

Plaintiffs raise several issues on appeal. They argue Sapporo U.S.A. violated New Jersey's Malt Alcoholic Beverage Practices Act (MABPA)[2] by anticipatorily breaching the Agreement between the parties. They contend the trial court erred in applying New York law because Sapporo U.S.A.'s actions violated the MABPA. They also assert the Agreement's arbitration clause is invalid because it does not expressly inform plaintiffs they are waiving their right to access to the courts. Plaintiffs further contend the trial court erred in its findings regarding who should decide issues concerning arbitrability. Lastly, they assert their appeal is not moot.

We granted the Beer Wholesalers' Association of New Jersey (BWANJ) leave to appear as amicus curiae. BWANJ joins plaintiffs' arguments and contends the MABPA was designed to protect wholesalers and to prevent inequity in bargaining power between wholesalers and brewers. It further contends the choice-of-law analysis necessitates the application of New Jersey law to this dispute, and the MABPA's enforcement provisions established that New Jersey courts are the correct forum for this matter.

---

[2] N.J.S.A. 33:1-93.12 to -93.19.

Sapporo U.S.A. counters that the trial court correctly decided the arbitration-related issues. More fundamentally, it contends the issues in this matter are moot, given that it withdrew its notice to terminate.

We begin by addressing the mootness issue. As discussed above, after the trial court entered its order compelling arbitration, Sapporo U.S.A. withdrew its notices of termination. Plaintiffs argue that Sapporo U.S.A.'s withdrawal of the termination notices does not moot this appeal. More particularly, plaintiffs maintain they are entitled to a declaratory judgment that they were not in breach of the Agreement and that Sapporo U.S.A. had no basis to terminate the Agreement in order to ensure this does not become a "recurring tactic" utilized by Sapporo U.S.A. They contend that Sapporo U.S.A. has not provided any argument as to "why it cannot or will not repeat" its actions.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "[O]ur courts normally will not entertain cases when a controversy no longer exists and the disputed issues have become moot." DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring). An issue has become moot "when the decision sought in a matter, when rendered, can

have no practical effect on the existing controversy." N.Y. Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985).

The doctrine of mootness emanates from the Judiciary's unique institutional role as a branch of government that only acts when a genuine dispute is placed before it. We generally do not render advisory decisions retrospectively opining about the legality of matters that have already been resolved, for "[o]rdinarily, our interest in preserving judicial resources dictates that we do not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

In limited instances, courts will address the merits of appeals that have become moot, electing to do so "where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Ibid. For example, courts have set aside mootness concerns in certain cases where the matter evading review posed a significant public question or affected a significant public interest. See, e.g., In re Conroy, 98 N.J. 321, 342 (1985) (addressing the withholding or withdrawing of life-sustaining treatment); State v. Perricone, 37 N.J. 463, 469 (1962) (considering blood transfusions for an

infant that conflicted with the parents' religious beliefs a significant public interest).

Guided by these principles, we decline to reach the issues presented by plaintiffs as the matter is moot at this juncture. Sapporo U.S.A. has retracted its notices of deficiency and pending termination that gave rise to this litigation. Plaintiffs have at all times been supplied by Sapporo U.S.A. with beer and now no longer face the imminent prospect of losing their Sapporo distribution rights. Contrary to plaintiffs' assertion, there is no indication this is a "recurring tactic" employed by Sapporo U.S.A. against plaintiffs. This is the only time in the parties' long business relationship where Sapporo has threatened to terminate plaintiffs' distribution rights.

Finally, although the issues raised in the appeals are certainly important to plaintiffs and perhaps a limited class of liquor wholesalers, these matters do not sufficiently present issues of widespread importance to overcome mootness principles. This case involves a private commercial dispute that neither impacts any important public policy, nor, as noted above, is likely to reoccur. Under these circumstances, we discern no basis to issue an advisory opinion. See State v. Rose, 206 N.J. 141, 189 (2011) (Rivera-Soto, J., concurring in part and dissenting in part).

11

The appeal is dismissed as moot.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1051-23