**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3260-23

ARROW BALL LLC,

      Plaintiff-Respondent,

v.

ALEX PELED and NOAH
PELED,

      Defendants-Appellants,

and

PLAYA DEL SOL 380
CONDOMINIUM
ASSOCIATION, INC.

      Plaintiff/Intervenor-
Respondent.

_____

Submitted December 16, 2025 – Decided April 16, 2026

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. LT-000361-24.

Alex Peled and Noah Peled, self-represented appellants.

Dimitri Smirnov (Dimitri Smirnov, PC), attorney for respondent Arrow Ball LLC.

Honig & Greenberg, LLC, attorneys for respondent Playa Del Sol 380 Condominium Association, Inc. (Adam D. Greenberg, on the brief).

PER CURIAM

In this landlord-tenant action, self-represented defendants, Alex and Noah Peled, the tenants, appeal from a May 16, 2024 judgment of possession (JOP) entered following a bench trial in favor of plaintiff Arrow Ball LLC, the landlord. After defendants' applications to stay the warrant of removal were denied by the trial court and this court, defendants were removed from the leased premises. Because defendants fail to demonstrate the eviction carries potentially adverse residual legal consequences, we dismiss the appeal as moot.

We summarize the salient facts. On November 22, 2019, Alex[1] entered into a lease agreement with Yakov Goncharov for the subject rental unit located

---

[1] We use first names to avoid confusion caused by the common surname and intend no disrespect.

in Cherry Hill.[2]  In August 2022, Goncharov sold the unit to plaintiff.  According to plaintiff, defendants stopped paying rent at that time.

On October 31, 2022, Alex wrote a letter to plaintiff identifying the unit's "numerous issues including bad insulation, faulty plumbing, black mold[,] and [the] presence of asbestos."  The letter indicated all the issues had been "addressed to" Goncharov.  The letter accused Goncharov of "[m]isrepresentation and blatant [c]onsumer [f]raud," resulting in "a lump sum . . . credit" under the lease agreement.  The letter further alleged plaintiff "intentionally or negligently[] continuously exposed . . . [defendants] to severe injuries (black mold, asbestos, carbon monoxide, constant harassment[,] and physical and psychological harm)."

On May 25, 2023, plaintiff sent defendants[3] a "Notice to Pay Rent or Quit," alleging rent had not been paid from August 2022 to May 2023.  The notice required defendants to pay the delinquent rent totaling $10,175 or "move out[] and deliver possession" of the premises to plaintiff.  The notice specified

---

[2]  The lease lists the leaseholder as "Alex Armoa Teixeira," an apparent alias of Alex.  In their merits brief, defendants identify themselves as a married couple.  Although the lease does not list Noah as a resident of the property, defendants' brief states "they [both] moved in on or about November 22, 2019."

[3]  The letter was addressed to Alex "and all [o]ccupants."

A-3260-23

failure to comply would result in forfeiture of the lease and commencement of eviction proceedings. On the same date, plaintiff sent defendants a lease termination letter, notifying them that effective July 1, 2023, the lease agreement would be terminated based on "fail[ure] to pay the rent as required," "[c]omplaints from neighbors," and "[d]amage to the property."

After defendants failed to tender rent or surrender the premises, on August 17, 2023, plaintiff filed a complaint against Alex[4] under Docket No. 5218-23 for JOP, alleging non-payment of rent. Because defendants failed to provide transcripts of the pertinent proceedings, see R. 2:6-1(a)(1)(I), it is unclear in the appellate record exactly what transpired procedurally after the complaint was filed.

However, it appears defendants requested a habitability hearing that was ultimately conducted on December 7, 2023, and resulted in the trial judge granting defendants an abatement and issuing an order to turn over escrow funds divided between the parties as follows: $2,590 to plaintiff and $10,360 to defendants. Neither plaintiff nor plaintiff's counsel appeared for the habitability hearing during which defendants testified regarding the condition of the

---

[4] A subsequent complaint named both Alex and Noah as defendants.

A-3260-23

property and proved their habitability claims to the judge's satisfaction. Plaintiff had requested an adjournment of the habitability hearing, but the request was denied by the judge.[5]

Plaintiff subsequently filed another complaint against defendants under Docket No. 0361-24 seeking possession of the property based on non-renewal of the lease and non-payment of rent. An amended complaint contained a claim for damages to the property. See N.J.S.A. 2A:18-61.1(c) (permitting the removal of a tenant who "has willfully or by reason of gross negligence caused or allowed destruction, damage[,] or injury to the premises"). After dismissing and reinstating Docket No. 0361-24, and conducting a hearing to address the status of the repairs, which defendants did not attend, the judge scheduled a trial for May 16, 2024.[6] At the beginning of the trial, Playa Del Sol 380 Condominium Association, Inc. (Playa Del Sol), the property's homeowner's

---

[5] No transcript of the December 7, 2023 habitability hearing was provided in the record. We glean the facts concerning the content of the hearing from the judge's references in a subsequent proceeding and order.

[6] Upon receiving notice of the trial, defendants filed a plethora of motions claiming conspiracy, discrimination, mail fraud, and other issues. All of defendants' motions were ultimately denied by the judge.

A-3260-23

association, moved to intervene pursuant to Rule 4:33-2 as an interested party. The judge granted the motion over defendants' objection.

During the trial, plaintiff and Playa Del Sol presented evidence that defendants had willfully damaged the property by causing leaks that flooded lower units of the six-story apartment building. Defendants countered with various conspiracy claims.

William Arcari, president of Playa Del Sol and a twenty-five-year veteran of the Cherry Hill Fire Department, testified for plaintiff. According to Arcari, he was called to defendants' unit in April 2024 to respond to a water leak in the unit just below defendants' unit. Arcari was unable to enter defendants' bathroom, where the leak supposedly originated, but said he "did[ not] see anything out of the ordinary" and that, to his knowledge, defendants' unit had no leaks or plumbing concerns of which he was aware. However, Arcari believed defendants somehow "caused th[e] damage" to the unit below. Arcari also testified that in 2022, the previous owner of the property had paid for significant renovations to defendants' unit, and "all the issues were handled at that time."

Wesley Bingham, the maintenance supervisor for Playa Del Sol, testified for intervenor. Bingham testified he entered defendants' unit and the unit below

6

on April 18, 2024, and witnessed the "water supply line leaking from [defendants' toilet valve]." According to Bingham, the leak in defendants' unit "was a little bit more than a drip, but it wasn't pouring out." Bingham did not believe the damage to the unit below was caused by defendants' toilet valve. Bingham returned to defendants' unit a few days later and tightened all the water valves.

Gabriel Dimedio, Playa Del Sol's property manager, testified he visited defendants' unit once to assess the mold defendants complained about. He confirmed that in 2022, a licensed contractor remediated the mold by replacing the wall "where the supposed problem was."

The judge granted JOP in favor of plaintiff. The JOP, entered on May 16, 2024, stated "[t]he [c]ourt . . . conducted a trial on the issues raised in the complaint and defenses of [h]abitability raised by the tenant; and the [c]ourt . . . found that . . . defendant has not established the defense of[ h]abitability." The judgment further provided "[t]he [l]andlord . . . produced and the [c]ourt . . . reviewed a copy of the lease and any required registration statement and found that the [l]andlord has proven a cause of action for possession [as] . . . [t]enant has willfully caused damage to the property."

In an oral opinion of the same date, the judge found "defendant ha[d] wil[l]fully destroyed[,] damage[d,] or injured the premises." The judge also found Alex was not credible and determined there were "absolutely no habitability issues" with the unit. The judge explained Alex "was not . . . straight with the [c]ourt" and "took advantage of the situation where there was no plaintiff here during th[e first] habitability hearing." The judge believed Alex "[d]id not disclose to the [c]ourt a fair and honest history of his tenancy in th[e] unit, . . . whether it was with [the previous landlord] . . . or with [plaintiff]." The judge added "a lot of [defendant's] complaints . . . were either . . . pre-existing problems that were then addressed by the prior . . . landlord . . . or were potentially . . . caused by [defendant]."

Specifically, the judge found Alex was not truthful about renovations that the previous landlord had ordered, including reconstructing and replacing a wall, or about defendants' prior allegations "with regard to mold claims." Regarding the leak from the bathroom that Alex claimed came from the toilet valve, the judge rejected Alex's version of events, again deeming his testimony not credible and finding the ensuing water damage to units below was "a result of [Alex]'s . . . conduct in some sort of strange way or the other," as was the "mold to the exten[t] that there was mold in there."

A-3260-23

Likewise, the judge rejected Alex's suggestion that the "health department people were . . . conspiring against" and "lying to him," referring to the suggestion as "untrustworthy" and "not believable." The judge also found "no proof of" asbestos, which Alex alleged was in the apartment. In sum, the judge found:

> [I]t seems that [Alex], for whatever reason, is basically unable to be satisfied no matter what is done with regard to that property. . . . What I saw [in videos presented to the court] is what he was complaining about w[ere] cosmetic types of matters. . . . [T]he caulking was . . . not good. . . . There was some . . . drywall work that was . . . probably sub-par. . . . [That's c]osmetic. He was complaining . . . the lock is hard to . . . open as he gets in the door. He was complaining there's no threshold under the . . . front door. . . . That's cosmetic. It's not habitability.

Defendants sought a stay pending appeal and a hardship stay, both of which were denied on June 6 and 10, 2024, respectively.[7] This appeal, limited to the May 16, 2024 JOP, followed.[8]

---

[7] We denied defendants' emergent application for relief.

[8] Defendants' notice of appeal only identifies the May 16, 2024 JOP as the subject of the appeal. "It is clear that it is only the orders designated in the notice of appeal that are subject to the appeal process and review." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458 (App. Div. 2008).

On appeal, defendants reprise the arguments rejected by the judge, including: the judge lacked jurisdiction to hear the case because plaintiff's notice to quit failed to meet the statutory requirements of the New Jersey Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12; the judge impermissibly reinstated the case and allowed Playa Del Sol to intervene; plaintiff failed to register the property as required by N.J.S.A. 46:8-28, governing the registration requirements for the owner of "a one-dwelling unit rental"; and plaintiff lacked standing to bring the action under N.J.S.A. 14A:2-2.1(1)(a), prohibiting a corporation doing business in the State from transacting business "using a name other than its actual name" in order "to be deceptive as to its actual identity."

Although the parties dispute how defendants vacated the premises, defendants concede they are no longer occupying the property. According to plaintiff, new residents now occupy the property. In a summary dispossess action, "the court's jurisdiction is limited to determining the issue of the landlord's right to possession of the premises." Daoud v. Mohammad, 402 N.J. Super. 57, 61 (App. Div. 2008). If "the tenant vacated the premises and the premises have been re-rented, the issue can no longer be determined" and is deemed moot. Ibid.; see Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div.

2005) ("Ordinarily, where a tenant no longer resides in the property, an appeal challenging the propriety of an eviction is moot.").

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Stop & Shop Supermarkets Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). "[F]or reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, [or] a judgment cannot grant effective relief." Ibid. (alteration in original) (quoting Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)).

> An appeal issue is moot if the appellant "is not entitled to any affirmative relief." Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484 (2008). See also Redd v. Bowman, 223 N.J. 87, 104 (2015) ("An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011))).
>
> [In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 202 (App Div. 2023).]

Here, the matter is moot because defendants were removed from the premises and vacating the JOP would have no practical effect. See Sudersan, 386 N.J. Super. at 251. On June 3, 2024, defendants were served with a warrant

of removal informing them that a special civil part officer would execute the warrant, to "remove all persons from the property," and to "vacate the premises and permit the landlord to change the locks." On June 13, 2024, defendants were removed from the premises by a special civil part officer and plaintiff regained possession of the property. Defendants have not identified what, if any, residual legal consequences will ensue if the JOP is not vacated. That fact renders this appeal moot. See id. at 251, 254 (vacating a JOP when "the eviction carrie[d] residual legal consequences potentially adverse to defendant," who may have lost her federal housing subsidy if the unlawful eviction stood, but declining to "grant [the] defendant any further relief").

We will decide moot issues "where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Wisniewski v. Murphy, 454 N.J. Super. 508, 519 (App. Div. 2018) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996)). That said, "[b]efore continued jurisdiction will be invoked in moot cases[,] there must be an 'issue of great public importance compelling definitive resolution despite mootness.'" Ibid. (quoting Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303 (1975)). Defendants' arguments do not meet that high standard.

12

As we noted in <u>Daoud</u>, 402 N.J. Super. at 61-62, rejecting defendants' arguments as moot would not leave them without a remedy. Indeed,

> if defendant[s] feel[] aggrieved by the disposition, [they] may still pursue a remedy in the Law Division. <u>See</u> <u>Acad. Spires, Inc. v. Jones</u>, 108 N.J. Super. 395, 400 (Law Div. 1970) (stating a landlord who unjustifiably seeks and obtains possession may later be held to respond in damages and citing N.J.S.A. 2A:18-59, <u>Constr. and Renting Corp. v. Stein</u>, 6 N.J. Super. 239 (App. Div. 1950), and <u>Lyster v. Berberich</u>, 3 N.J. Super. 78 (App. Div. 1949)).
>
> [<u>Daoud</u>, 402 N.J. Super. at 61 (citations reformatted).]

Thus, we dismiss the appeal without prejudice to defendants' pursuing whatever remedies may be available in the Law Division, subject to plaintiff's valid defenses, if any. As in <u>Daoud</u>, "[w]e do not suggest that such an action should be pursued or would have a favorable outcome; we simply point out that there are means of relief for an aggrieved tenant other than retention of the premises." <u>Id.</u> at 61-62.

Appeal dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3260-23